AO 106A (08/18) Application for a Warrant by Telephone or Other Reliable Electronic Means

# UNITED STATES DISTRICT COURT
for the
District of Oregon

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br><br>Wilmer Josiel Cruz-Ramos<br>Buccal Swabs (DNA Sample) | )<br>)<br>) Case No.  3:25-mc-354<br>)<br>)<br>) |

**APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS**

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

Wilmer Josiel Cruz-Ramos (DOB XX/XX/04), Buccal Swabs (DNA Sample), currently in custody at Columbia County Jail, 901 Port Ave., St. Helens, OR 97051

located in the _____ District of ____Oregon____, there is now concealed *(identify the person or describe the property to be seized)*:

DNA of Wilmer Josiel Cruz-Ramos (DOB XX/XX/04)

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. Section 922(g)(5) | Alien in Possession of a Firearm |
| 18 U.S.C. Section 924(c)(1)(A) | Possession of a Firearm in Furtherance of a Drug Trafficking Offense |

The application is based on these facts:
See affidavit which is attached hereto and incorporated herein by this reference.

☑ Continued on the attached sheet.

☐ Delayed notice of ____ days *(give exact ending date if more than 30 days:* ____*)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
Clay Othic, HSI, Special Agent
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
Telephone at  4:49   a̶.m̶./p.m.   *(specify reliable electronic means)*.

Date:  March 28, 2025

_____
*Judge's signature*

City and state:  Portland, Oregon

Youlee Yim You, United States Magistrate Judge
*Printed name and title*

# ATTACHMENT A

## Person to be Searched

Based upon the information contained in this affidavit, I am requesting a warrant to search the following individual:

Wilmer Josiel CRUZ-Ramos, Hispanic male, DOB: XX/XX/2004, 5'08", 140 pounds, located at Columbia County Jail, 901 Port Ave., St. Helens, OR 97051.



**Attachment A**     **Page 1**

## ATTACHMENT B

### Items to Be Seized

The items to be searched for, seized, and examined, are those items on CRUZ-Ramos that contain evidence, contraband, fruits, and instrumentalities of violations of Title 18 U.S.C. Section 922(g)(5), Alien in Possession of a Firearm, and Title 18 U.S.C Section 924(c)(1)(A), Possession of a Firearm in Furtherance of a Drug Trafficking Crime. The items to be seized include:

1. DNA standard by obtaining four (4) buccal swabs from the interior of CRUZ-Ramos's cheek. These swabs are to be collected by HSI and its designated agents.

DISTRICT OF OREGON: ss:                           AFFIDAVIT OF CLAY OTHIC

**Affidavit in Support of an Application Under Rule 41 for a Search Warrant**

I, Clay Othic, being first duly sworn, hereby depose and state as follows:

**Introduction and Agent Background**

1.      I am a Special Agent (SA) with Homeland Security Investigations (HSI) and have been so employed since 2020. I am a law enforcement officer of the United States within the meaning of Title 18, United States Code, Section 2510(7), and I am authorized by law to conduct investigations and to make arrests for felony offenses. I am currently assigned to the Assistant Special Agent in Charge, Portland, Oregon. Prior to this, I was employed as a Special Agent with the Immigration and Naturalization Service from 1996 to 2004. I am authorized and assigned to investigate violations of federal laws, including 18 U.S.C. § 545, that covers smuggling, and 21 U.S.C. §§ 841(a)(1), 846, 848, 843(b), and 952(a) of the Drug Abuse Prevention and Control Act of 1970, that is, possession with intent to distribute and the distribution of controlled substances, conspiracy to commit such offenses, the operation of a continuing criminal enterprise, and the use of a communication facility to facilitate a felony violation of the Drug Abuse Prevention and Control Act of 1970, and the illegal importation of controlled substances. During my tenure as a federal law enforcement officer, I have investigated and/or participated in investigations of conspiracy, money laundering, narcotics trafficking, fraud, smuggling, illegal firearms possession, and theft. I have also acquired knowledge and information about the illegal drug trade and the various means and methods by which it is furthered including using computers, smart phones, digital media and the Internet from formal and informal training, other law enforcement officers and investigators, informants,

individuals I have arrested and/or interviewed, and from my participation in other investigations. I am currently detailed to the High Intensity Drug Trafficking Area (HIDTA) Interdiction Taskforce (HIT) located at the Portland Police Bureau's Narcotics and Organized Crime Division.

2.     I submit this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant to collect DNA from Wilmer Josiel CRUZ-Ramos.  As set forth below, I have probable cause to believe that Cruz-RAMOS' DNA will assist in determining his role in the offenses being investigated.

3.     I have probable cause to believe that CRUZ-Ramos was working to distribute controlled substances in the Portland metropolitan area, to include Fentanyl.  As set forth below, I have probable cause to believe that CRUZ-Ramos has committed violations of Title 18, United States Code, Section 922(g)(5)(A), Alien in Possession of a Firearm and Title 18 United States Code, Section 924(c)(1)(A), Possession of a Firearm in Furtherance of a Drug Trafficking Crime.

4.     This affidavit is intended to show only that there is sufficient probable cause for the requested warrants and does not set forth all of my knowledge about this matter. The facts set forth in this affidavit are based on my own personal knowledge, knowledge obtained from other individuals during my participation in this investigation, including other law enforcement officers, interviews of witnesses, a review of records related to this investigation, communications with others who have knowledge of the events and circumstances described herein, and information gained through my training and experience.

**Applicable Law**

5.     Title 18, United States Code, Section 922(g)(5)(A) prohibits the possession of any firearm in or affecting commerce by an alien who is illegally or unlawfully in the United States.

**Affidavit of Special Agent Clay Othic**                                                                              **Page 2**

6. Title 18, United States Code, Section 924(c)(1)(A) prohibits knowingly using, carrying, or brandishing a firearm during and in relation to any crime of violence or drug trafficking crime or knowingly possessing a firearm in furtherance of a crime of violence or a drug trafficking crime.

**Statement of Probable Cause**

7. This affidavit is based upon a joint investigation, conducted by HSI and the Portland Police Bureau (PPB) as part of the HIDTA Interdiction Task Force (HIT), a task force comprised of local, state, and federal law enforcement agencies (hereinafter collectively referred to as "investigators").

<u>December 6, 2024 Arrest</u>

8. On December 6, 2024, members of the Portland Police Bureau (PPB) arrested CRUZ-Ramos after he was observed by officers conducting street-level fentanyl sales in downtown Portland, Oregon. Specifically, officers observed a group of people lining up around CRUZ-Ramos on the street. People approached CRUZ-Ramos and handed him cash and, in return, he handed them a pinch of a white substance out of a baggie. CRUZ-Ramos was stopped, placed under arrest, and found to be in possession of a total of 24.9 grams of a powder substance that field tested positive for fentanyl. He was read his *Miranda* rights in Spanish, acknowledged he understood those rights, and indicated that he does not use fentanyl and that he only sells.

9. CRUZ-Ramos was subsequently charged with the following state offenses

- MCS/DCS DRUGS WITHIN 1000FT OF SCHOOL – Felony
- UNLAWFUL DELIVERY OF IMITATION DRUGS SCHEDULE II – FENTANYL – Felony

- RECKLESS ENDANGERING ANOTHER PERSON – Class A Misdemeanor

10. CRUZ-Ramos was booked into the Multnomah County Detention Center; however, he was released three days later on his own recognizance after making his initial appearance in state court.

January 22, 2025 Arrest

11. On January 22, 2025, members of the Portland Police Bureau (PPB) arrested CRUZ-Ramos after he was observed by officers conducting street-level fentanyl sales in downtown Portland, Oregon. Specifically, officers observed a group of people huddled around CRUZ-Ramos on the street. The crowd dispersed when they saw PPB officers approaching, and CRUZ-Ramos walked away. CRUZ-Ramos noticed PPB Officers approaching him in their marked patrol car and was observed by Officers "ditching" two clear plastic baggies before he could be encountered. CRUZ-Ramos was arrested and, PPB Officers recovered the two clear plastic baggies that CRUZ-Ramos "ditched" and found them to contain a powder substance that field tested presumptively positive for fentanyl. Additional powder fentanyl was found in CRUZ-Ramos's jacket pocket during his arrest for a total of 21.5 grams.

12. Additionally, an abandoned backpack was found by a PPB Officer under a car in the immediate area of CRUZ-Ramos following his arrest. Inside the backpack, PPB Officers located a loaded Ruger .22 caliber pistol. The pistol was swabbed for DNA and held in evidence however, since it could not be directly attributed to CRUZ-Ramos there were no charges associated with it. CRUZ-Ramos was advised of his *Miranda* rights in Spanish and acknowledged he understood those rights. He said does not use fentanyl himself and was buying fentanyl for his friend. He said the bags that he "ditched" were not his and the fentanyl

in his pocket was for his friend. He denied ownership of the firearm found in the backpack and claimed his DNA would not be on it.

13. CRUZ-Ramos was subsequently charged with the following state offenses –

- UNLAWFUL MANUFACTURE/DELIVERY OF DRUGS SCHEDULE II – Felony
- PCS FENTANYL - FELONY - 5+ GRAM / 25+ UNITS OR COMMERCIAL - Felony
- MCS/DCS DRUGS WITHIN 1000FT OF SCHOOL – Felony

14. CRUZ-Ramos was booked into the Multnomah County Detention Center; however, he was released the following day on his own recognizance after making an initial appearance in state court.

February 11, 2025 Arrest

15. Following these two arrests, Oregon State Police (OSP) Detective Caleb Borchers (hereinafter "Detective Borchers"), a member of HIT, began an investigation into CRUZ-Ramos for fentanyl distribution. Detective Borchers retrieved the details of CRUZ-Ramos's prior arrests and associated the telephone number (503) 868-1501 (hereinafter, "Target Cell Phone") to CRUZ-Ramos during his prior arrest on January 22, 2025.

16. On February 11, 2024, Investigators with HIT initiated a narcotics "Buy/Bust" operation in Portland, Oregon targeting fentanyl dealers. As part of the operation Detective Borchers initiated a text message in an uncover capacity as "Ricky" to the Target Cell Phone inquiring if CRUZ-Ramos "got anything today". Subsequently CRUZ-Ramos offered to sell and deliver an ounce of drugs for $1,000.00 to Detective Borchers. Screenshots of the text conversation are depicted below –




17. Investigators established surveillance at the agreed upon location. When CRUZ-Ramos arrived in his car, he called Detective Borchers and spoke directly to him. Detective Borchers confirmed with CRUZ-Ramos which vehicle he was operating and relayed that

**Affidavit of Special Agent Clay Othic**            **Page 6**

information to myself and other Investigators in the area. At that time, myself, Detective Borchers and multiple other Investigators contacted CRUZ-Ramos in the driver's seat of his vehicle and subsequently took him into custody along with a juvenile male (hereinafter, Juvenile Male) who was located in the backseat behind CRUZ-Ramos.

18. I removed Juvenile Male from the vehicle and placed him in handcuffs. Upon doing so, I observed a black pistol underneath the driver's seat. Once both CRUZ-Ramos and Juvenile Male were detained, I asked CRUZ-Ramos if he was in possession of any identification. CRUZ-Ramos stated his identification was in his car.

19. I found a wallet in the center console area of the car that contained a Guatemalan Consulate Identification Card bearing the name Angel Gabriel MARTINEZ-Murillo and CRUZ-Ramos's picture. I asked CRUZ-Ramos if his name was Angel and if he was Guatemalan, which he claimed was accurate. Based on my training and experience with identification documents, I suspected the document to be fraudulent.

20. I asked Juvenile Male for identification, but he claimed to not have any on his person, however he stated he possessed a Honduran passport at his residence. When I asked for the spelling of his name, Juvenile Male spontaneously claimed ownership of the pistol found under the driver's seat.

21. Detective Borchers told me he immediately recognized CRUZ-Ramos from his most recent booking photo. Detective Borchers and Oregon State Police (OSP) Trooper Heidi Hernandez (a native Spanish speaker) advised CRUZ-Ramos they knew CRUZ-Ramos was there to sell fentanyl and requested consent to search RAMOS-Cruz's vehicle. CRUZ-Ramos gave Detective Borchers verbal consent to search the vehicle.

22.     Detective Borchers located white chunky substance in the center console of the vehicle wrapped in clear plastic wrapping. There was also a small digital scale under the substance.  Detective Borchers later weighed the substance and found it to be approximately 29 grams.  Additionally, Detective Borchers used a Mobile Detect field test and received a presumptive positive result for the presence of fentanyl. A photograph of the fentanyl is below –



23.     Detective Borchers located a black semi-automatic pistol under the driver's seat. It was positioned with the barrel pointed back and to the driver's side.  This is indicative of how someone would likely place a pistol under their seat with their right hand.  The pistol was Berretta APEX 9mm, had a round in the chamber, and an additional nine rounds in the magazine. A picture of the pistol after it was removed from under the seat is below –

/ /

/ /

/ /

/ /

**Affidavit of Special Agent Clay Othic**                                                                                                      **Page 8**



24.　　Both Juvenile Male and CRUZ-Ramos were transported to the HIT office where they were placed into holding cells and Investigators processed evidence.

Interviews of CRUZ-Ramos

25.　　Detective Borchers and Trooper Hernandez advised CRUZ-Ramos of his *Miranda* rights in Spanish, which he stated he understood.

26.　　CRUZ-Ramos initially identified himself to Detective Borchers as "Angel" and said this was the first time he has ever attempted to sell drugs. Detective Borchers provided CRUZ-Ramos with his booking photo from his January 22 arrest, to which CRUZ-Ramos admitted to Detective Borchers his true identity. CRUZ-Ramos stated he provided a false name because he was nervous. CRUZ-Ramos also told Detective Borchers the firearm under the seat was his and that he keeps it for protection because he is fearful of being robbed again while selling drugs. CRUZ-Ramos stated he had been robbed recently. CRUZ-Ramos also told

Detective Borchers that selling fentanyl is his main source of income and that he did not sell any other type of drugs.

27. Following Detective Borchers' interview with CRUZ-Ramos, I re-interviewed CRUZ-Ramos with Detective Borchers and Trooper Hernandez, introducing myself as a Special Agent with Homeland Security Investigations. Prior to beginning the interview, I provided CRUZ-Ramos with a Spanish *Miranda* Warning form, which he read, signed, and stated he understood and was willing to waive his rights and talk with Investigators.

28. Additionally, CRUZ-Ramos provided written consent allowing Investigators to search the Target Cell Phone, which was used in the text conversation that led to his arrest.

29. During the interview CRUZ-Ramos confirmed his identity and admitted to his prior arrests. I told CRUZ-Ramos that there were possible charges pending for narcotics and firearms offenses. Upon hearing about possible firearms-related charges, CRUZ-Ramos stated the pistol was the Juvenile Male's, contradicting what he had told Detective Borchers earlier. I asked why anyone would carry a pistol and CRUZ-Ramos stated, "for protection." I inquired if CRUZ-Ramos needed protection and if selling drugs was dangerous to which he responded "yes, I was robbed at gunpoint by a customer 15 days ago". I asked if CRUZ-Ramos had ever handled the pistol that was found in his car, which he denied.

30. I confirmed that CRUZ-Ramos was a native and citizen of Honduras and did not have any legal residency or pending applications. I know from records checks that CRUZ-Ramos was arrested by the United States Border Patrol on March 27, 2021, in Eagle Pass, Texas after crossing the United States / Mexico border illegally. CRUZ-Ramos was placed into removal proceedings but allowed to remain in the United States and placed in the care of

relatives living in Florida due to being an unaccompanied juvenile at the time of his arrest. With this information I ended the interview.

### Review of Target Cell Phone

31.     Detective Borchers and I briefly reviewed text messages on the Target Cell Phone and found text messages with multiple customers dating back to December 14, 2024, arranging the sales of narcotics with CRUZ-Ramos.

32.     Additionally, there are messages in which CRUZ-Ramos expresses interest in firearms being offered by customers in exchange for drugs as well as receiving an AR-15 from a customer which CRUZ-Ramos needs assistance with. A picture of two of these messages are below –



33. I know that before the above-mentioned Beretta firearm was removed from the vehicle, Officer Gericke (PPB) arrived on scene and performed a DNA swab of the Beretta firearm. Officer Gericke the took possession of the Beretta firearm and submitted it into evidence at the Portland Police Bureau. Officer Gericke also submitted the DNA collection sample to the Oregon State Police Crime Laboratory. I know Officer Gericke to be trained and certified in the DNA evidence collection.

34. I know from my training, experience, and conversations with investigators and members of the OSP Crime Laboratory that human DNA is often considered evidence which is helpful in furthering criminal investigations. I know DNA is located and/or extracted from items such as hair, blood, sweat, skin cells, and other bodily substances and cellular materials. I know these materials are often left at the scene of the crime or found in trace quantities on objects seized as evidence, to include on firearms.

35. I know from training that DNA is organic hereditary material found in nearly every organism and that DNA is unique for each organism as well as each specific individual. DNA can be found in the cell nucleus as well as cellular mitochondria and is nearly identical throughout every cell in the organism. I know that oral swabs for buccal cells or blood samples, which both contain cellular DNA of the suspected person, can be used to create a DNA profile standard. This standard can then be used to compare against the DNA profile taken from the evidentiary cellular material seized in this case. I know that the OSP Crime Laboratory routinely swabs textured surfaces and the front sight of pistols they are examining for DNA evidence prior to conducting testing for latent fingerprints. After receipt of the DNA sample that is sought by this search warrant, the OSP Laboratory will compare the DNA

sample to the DNA recovered from Beretta semi-automatic pistol under the driver's seat in this case.

## Conclusion

36.     Based on the foregoing, I have probable cause to believe, and I do believe that Wilmer CRUZ-Ramos committed violations of Title 18, United States Code, Section 922(g)(5)(A), Alien in Possession of a Firearm, and Title 18 United States Code, Section 924(c)(1)(A), to wit: Possession of a Firearm in Furtherance of a Drug Trafficking Crime. Furthermore, I have probable cause to believe, and I do believe that CRUZ-Ramos' DNA, which may be obtained by swabbing the interior cheek in his mouth, will yield further evidence that CRUZ-Ramos has committed violations of 18 U.S.C. 922(g)(5)(A) and 18 U.S.C. § 924(c) .  I therefore request that the Court issue the proposed search warrant pursuant to Federal Rule of Criminal Procedure 41.  I further request that HSI and its designated agents be permitted to collect a DNA sample from CRUZ-Ramos pursuant to the warrant.

//
//
//
//
//
//
//
//
//
//

37. Prior to being submitted to the Court, this affidavit, the accompanying complaint, and the arrest warrant were all reviewed by Assistant United States Attorney Charlotte Kelley. AUSA Kelley advised me that in her opinion the affidavit and complaint are legally and factually sufficient to establish probable cause to support the issuance of the requested warrant.

<u>By phone pursuant to Fed R. Crim. P. 4.1</u><br>
Clay Othic / Special Agent<br>
Homeland Security Investigations

Subscribed and sworn in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone at <u>4:49 pm</u> on March <u>28</u> 2025.

<i>Youlee Yim You</i><br>
HONORABLE YOULEE YIM YOU<br>
UNITED STATES MAGISTRATE JUDGE